**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**EVERETT B. COLLINS** and
**CHARLES E. COLLINS, III,**

                              **Plaintiffs,**                    **1:12-cv-494**
                                                                  **(GLS/RFT)**

              **v.**

**SARATOGA COUNTY SUPPORT**
**COLLECTION UNIT et al.,**

                              **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Everett B. Collins
Pro Se
108 Brunswick Road
Troy, NY 12180

Charles E. Collins, III
Pro Se
108 Brunswick Road
Troy, NY 12180

**FOR THE DEFENDANTS:**
_Saratoga County Support_
_Collection Unit, Saratoga County_
_Attorney's Office, Kupferman_
Bailey, Kelleher Law Firm                 CRYSTAL R. PECK, ESQ.
Pine West Plaza 5
Suite 507
Washington Avenue Extension
Albany, NY 12205

*New York State Division of*
*Child Support Enforcement*
HON. ERIC T. SCHNEIDERMAN          BRUCE J. BOIVIN
New York State Attorney General          Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiffs *pro se* Everett B. Collins and Charles E. Collins, III

commenced this action against the Saratoga County Support Collection

Unit (SCSCU), Saratoga County Attorney's Office (SCAO) and Richard A.

Kupferman (collectively, the "Saratoga County defendants"), and the New

York State Division of Child Support Enforcement (DCSE) and two John

and Jane Doe defendants under 42 U.S.C. §1983 and common law,

alleging violations of their equal protection and due process rights as a

result of misappropriation of child support funds, fraud, and the unlawful

suspension of Charles' driver's license.  (*See* Compl., Dkt. No. 1.)  Pending

are defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6),

(*see* Dkt. Nos. 10, 13), and plaintiffs' cross motions to compel discovery,

(*see* Dkt. Nos. 16, 17).  For the reasons that follow, defendants' motions

2

are granted and plaintiffs' cross motions are denied as moot.

## II. __Background__[1]

Everett and his father, Charles, base their causes of action on separate events that have in common only their relation to the latter's legal obligation to pay child support to the former.  (*See generally* Compl.)  On July 22, 2010, Charles was ordered by the State of New York Supreme Court in Saratoga County to pay any and all future child support for his three children—including Everett—directly to the SCSCU.  (*See id.* ¶ 8; Dkt. No. 1, Attach. 1 at 4.)  This instruction was repeated to Charles by the SCSCU in a September 2, 2010 letter.  (*See* Compl. ¶ 13.)  Charles complied with the directives of the court and SCSCU, and has since remitted over $10,000 in child support payments directly to the SCSCU.  (*See id.* ¶ 15.)  The SCSCU also garnished a Fidelity Investment account held by Charles.  (*See id*. ¶ 16.)  None of that money, however, has been disbursed to Everett, and his support account has been closed.  (*See id*. ¶ 19, 26.)

In the same July 22, 2010 court order, the Supreme Court also made

_____

[1]  The facts are drawn from the Collins' Complaint and presented in a light most favorable to them.

3

a determination regarding the ownership of a Charter One Bank account that was seized by SCSCU in October 2001.  (*See id.* ¶ 30; Dkt. No. 1, Attach. 1 at 2-4.)  That account, worth over $20,000 and held in the names of Charles and his mother, Elinor S. King, was seized on the grounds that it was a joint account.  (*See* Compl. ¶¶ 34, 41, 43.)  Contending that the account belonged solely to her, and seeking the return of its contents, King filed a petition in Supreme Court in January 2002.[2]  (*See id*. ¶ 35, 36.)  In its July 22 order, the Supreme Court found that King "was the sole owner of the account," and that the funds had therefore been "wrongfully attached by the [SCSCU]."  (*Id*. ¶ 30.)  The entire value of the account was ordered immediately returned to King.  (*See id*.)

By letter dated June 26, 2009, Charles was informed by the New York State Department of Motor Vehicles (DMV) that his driver's license would be suspended as of July 10, 2009 "for back child support."  (*Id*. ¶ 45.)  On July 6, 2009, citing failure by the SCSCU to comply with N.Y. Soc. Serv. Law § 111-b, Charles sought to enjoin the pending license suspension by filing an order to show cause in Saratoga County Family

---

[2] It is unclear what, if any, legal action was taken relating to the Charter One account between January 2002 and the issuance of the July 2010 decision.

Court.  (*See id*. ¶ 46.)  Charles' order was dismissed, and his license

suspension began, four days later.  (*See id*. ¶¶ 45, 48, 49.)  Eight months

later, on March 15, 2010, Charles notified the SCSCU that, because he

was now subject to an income deduction order, his license should be

reinstated.  (*See id.* ¶ 53.)  In a March 30, 2010 letter, Defendant

Kupferman, a former Assistant Saratoga County Attorney, (*see* Dkt. No.

13, Attach. 2 at 4), notified Charles that, "upon [Kupferman's] advice," his

license privileges had been reinstated, (Compl. ¶ 54).

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled

and will not be repeated here.[3]  For a full discussion of the standard, the

court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz,*

*LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  Discussion

### A.    Eleventh Amendment Immunity

The DCSE, which is part of the Office of Temporary and Disability

Assistance (OTDA), seeks dismissal of the claims against it for lack of

_____

[3] Because the Collinses are proceeding *pro se*, the court will construe their Complaint
liberally.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

involvement and immunity under the Eleventh Amendment.  (*See* Dkt. No. 11 at 4-9.)  In response, the Collinses contend that the DCSE played an active role in depriving them of equal protection and due process, and that it "has lost its immunity."  (Dkt. No. 16, Attach. 2 at 2-9.)  The court agrees that the DCSE is immune to the Collins' claims.

The Eleventh Amendment bars "suit in federal court against a state or one of its agencies by its own citizens in the absence of the state's explicit consent to be sued or Congress' unequivocal abrogation of immunity."  *Turner v. Olympic Reg'l Dev. Auth.,* 89 F. Supp. 2d 241, 246 (N.D.N.Y. 2000).  Where a "state official acting in his official capacity" is sued for "prospective injunctive relief from violations of federal law," however, the Eleventh Amendment does not bar suit.  *Deposit Ins. Agency v. Superintendent of Banks of N.Y.* (*In re Deposit Ins. Agency*), 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks and citations omitted); *see Ex Parte Young*, 209 U.S. 123, 159-60 (1908).

OTDA is an agency "of New York State and thus cannot be sued under [s]ection 1983."  *Cincotta v. N.Y.C. Human Res. Admin.*, No. 00 Civ. 9064, 2001 WL 897176, at *9 (S.D.N.Y. Aug. 9, 2001).  While the Collinses seek to replace Doe defendants with the state employees responsible for

6

making the alleged decisions at issue, (*see* Dkt. No. 16, Attach. 1 ¶ 7), it is clear that, to the extent that their Complaint can be read to request prospective injunctive relief, it does so as against the State, not individual officials, (*see* Compl. ¶¶ 89-90).  Accordingly, as the DCSE is immune from the Collins' suit, and no prospective injunctive relief is sought against a state official acting in his official capacity, DCSE's motion to dismiss is granted.

**B.**   **Municipal Liability**

The Saratoga County defendants seek dismissal of the Collins' claims for failure to plead facts establishing municipal liability.[4]  (*See* Dkt. No. 13, Attach. 2 at 7.)  In response, the Collinses rely generally on the alleged impropriety of Saratoga County's decision to suspend Charles' driver's license.  (*See* Dkt. No. 17, Attach. 2 at 14-15.)  The court agrees that dismissal of all claims against the Saratoga County defendants is appropriate.

"To prevail against a municipality on a [section] 1983 claim, a plaintiff

---

[4]  In their initial argument, Saratoga County defendants request dismissal because the SCSCU and SCAO are entities of Saratoga County, and therefore are not subject to independent suit.  (*See* Dkt. No. 13, Attach. 2 at 3.)  While Saratoga County is the true municipal defendant, naming SCSCU and SCAO individually is not fatal to the Collins' action.

must demonstrate both an injury to a constitutionally protected right and that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy." *Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir. 2008) (internal quotation marks and citations omitted). Accordingly, a municipality may not be held liable under the doctrine of *respondeat superior*. *See Zherka v. City of N.Y.*, 459 F. App'x 10, 12 (2d Cir. 2012). Where a municipal employee "has been granted discretion in the performance of his duties," but does not have "final policymaking authority" in the area in question, his actions do not "subject the government to [section] 1983 liability." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (internal quotation marks and citation omitted).

In asserting their claims against the Saratoga County defendants, the Collinses make no allegation that the two actions which allegedly violated their constitutional rights—the misappropriation of Everett's child support funds and the suspension of Charles' driver's license—resulted from a county custom or policy. (*See generally* Compl.) They instead admit in their response papers that they have "no way of knowing what the policies or customs are of the SCSCU and the SCAO." (Dkt. No. 17, Attach. 2 at 14.) To the extent that Charles suggests that the suspension of his driver's

8

license was influenced by the action or inaction of Kupferman, (*see id*. at 9-12), that allegation also fails to implicate municipal liability.  While the Collins' Complaint suggests that Kupferman retained discretion in the area of revocation and reinstatement of driver's licenses, (*see* Compl. ¶ 54), it is entirely devoid of facts or allegations suggesting that he, as an Assistant County Attorney, had final policymaking authority for Saratoga County in that area.  Accordingly, the Collinses have failed to plead facts sufficient to establish liability on behalf of Saratoga County, and the Saratoga County defendants' motion to dismiss is granted as to all claims against the SCSCU, SCAO and Kupferman in his official capacity.

**C.**   **Personal Involvement**

Next, Kupferman seeks dismissal of Charles' claims against him in his individual capacity for lack of personal involvement and because he is entitled to qualified immunity.  (*See* Dkt. No. 13, Attach. 2 at 4-6.)  Charles contends that he adequately alleged personal involvement and that Kupferman is not entitled to qualified immunity.  (*See* Dkt. No. 17, Attach. 2 at 9-12.)  The court agrees that Charles has failed to allege sufficient

personal involvement on the part of Kupferman.[5]

Damages in a section 1983 claim are only appropriate if the defendant was personally involved in the alleged constitutional violation. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). "[M]ere bald assertions and conclusions of law do not suffice." *Dorsey v. Fisher*, No. 9:09-CV-1011, 2010 WL 2008966, at *6 (N.D.N.Y. May 19, 2010) (internal quotation marks and citation omitted).

The overriding theory upon which Charles predicates his claims is that, in an effort to pressure him into convincing his mother to cede half of her seized Charter One Bank account to it, the SCSCU requested that the DMV suspend his driver's license despite knowing that such a suspension was unlawful because no current order of support existed against him. (*See* Compl. ¶ 44.)  Following Charles' letter to the SCSCU in March 2010, which indicated that continued suspension of his license was improper because he was now subject to an income deduction order, (*see id*. ¶ 53), Kupferman, in his role as Assistant County Attorney, notified Charles that his license privileges had been reinstated.  (*See id*. ¶ 54.)  Kupferman also

---

[5] Because Charles fails to allege sufficient personal involvement, the question of Kupferman's entitlement to qualified immunity need not be reached.  *See Soto v. Wright*, No. 11 Civ. 2289, 2012 WL 265962, at *4 (S.D.N.Y. Jan. 26, 2012).

provided Charles with a "copy of the Notice of Compliance which was sent to the [DMV] . . . to reinstate [his] driver's license," (*id*. ¶ 56), which indicated that Charles had "satisfied the requirements to avoid or terminate suspension of [his] driving privileges," (Dkt. No. 1, Attach. 1 at 71). Charles contends that this letter "shows that at any time [Kupferman] could have had [his] driver's license reinstated." (Compl. ¶ 57.) This argument ignores Charles' own admission that the basis for his reinstatement request was not the absence of an order of support, but the fact that he had become subject to an income deduction order, which, under N.Y. Soc. Serv. Law § 111-b(12)(b)(3), bars license suspension.

In August 2010, following the Supreme Court's determination that the Charter One Bank account was the sole property of King, Kupferman filed a letter directing the SCSCU to enforce that decision and stating that the SCAO would not be prosecuting any appeals in that case. (*See id*. ¶¶ 10, 33.) Charles claims that the August 2010 letter shows that Kupferman was representing the SCSCU in both Supreme Court matters and Family Court proceedings relating to the Collinses, and that he therefore must have known that "there was no current order of support" against Charles and that the SCSCU's suspension of his license was unlawful. (*See* Dkt. No.

11

17, Attach. 2 at 9-10.)  The extent of Kupferman's involvement, Charles

argues, was his failure to stop the SCSCU from its allegedly unlawful

suspension efforts.  (*See id*.)  Charles' allegations amount to mere

speculation regarding the knowledge that Kupferman must have gleaned

from his position as an Assistant County Attorney, and are insufficient to

constitute personal involvement.  *See Dorsey*, 2010 WL 2008966, at *6;

*see also Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (holding that "a

defendant in a [section] 1983 action may not be held liable for damages for

constitutional violations merely because he held a high position of

authority").  The only involvement which Charles alleges beyond the

speculatory level is Kupferman's role in ending the alleged constitutional

deprivation by having his license privileges reinstated.  Accordingly,

Charles has failed to sufficiently allege personal involvement by

Kupferman, and the claims against him in his individual capacity are

dismissed.

**D.    Remaining Unnamed Defendants**

       While dismissal of the Collins' Complaint is appropriate as against all

named defendants for the reasons articulated above, the Collinses also

include as parties unnamed state and county employees whom they allege

were involved in the actions at issue.  (*See* Dkt. No. 16, Attach. 1 ¶ 1; Dkt.

No. 17, Attach. 1 ¶ 1.)  "Courts have rejected the dismissal of suits against

unnamed defendants described by roles, until the plaintiff has had some

opportunity for discovery to learn the identities of responsible officials."

*Johns v. Goord*, No. 9:09-CV-1016, 2010 WL 3907826, at *7 (N.D.N.Y.

Sept. 30, 2010) (citing *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998)).  In

*Davis*, however, the Second Circuit predicated the need to provide *pro se*

plaintiffs the opportunity to ascertain the identities of unnamed defendants

on the existence of "a colorable claim."  160 F.3d at 922.  As discussed

below, the Collins' claims are not colorable, and dismissal of their

Complaint in its entirety is appropriate.

### 1.  *Equal Protection*

Saratoga County defendants argue that the Collins' equal protection

claims must fail for wholesale failure to plead the requisite elements. (*See*

Dkt. No. 13, Attach. 2 at 12.)  Plaintiffs assert no discernible response,

(*see* Dkt. No. 17 at 4), and the court agrees that dismissal is appropriate.

While a successful equal protection claim commonly requires an

allegation that the aggrieved party is a member of a protected class, "a

plaintiff can proceed as a 'class-of-one' by establishing that he or she 'has

13

been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Holmes v. Haugen*, 356 F. App'x 507, 509 (2d Cir. 2009) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  Here, the gravamen of Everett's claims is misappropriation of child support funds to which he is entitled, while Charles seeks redress for the unlawful revocation of his driver's license.  (*See generally* Compl.)  Even reading their Complaint liberally as asserting "class-of-one" claims, neither Collins alleges that he has been treated differently than other similarly-situated individuals.  (*See id.*)  Accordingly, dismissal of the Collins' equal protection claims is appropriate.

### 2.    *Due Process*

Defendants contend that the Collins' procedural due process claims—relating to the disbursement of child support payments to Everett and suspension of Charles' driver's license[6]—should be dismissed because both plaintiffs had access to adequate remedial measures.  (*See*

_____

[6] In analyzing a due process claim, "[t]he threshold issue is always whether the plaintiff has a property or liberty interested protected by the Constitution."  *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (internal quotation marks and citations omitted).  Defendants concede by omission, and the court agrees, that Everett had a protected liberty interest in the child support funds owed to him, and Charles had a protected property interest in his driver's license.  *See Perry v. McDonald*, 280 F.3d 159, 174 (2d Cir. 2001) (holding that a driver's license constitutes a property interest).

Dkt. No. 13, Attach. 2 at 10-12; Dkt. No. 18 at 5-6.)  In response, the

Collinses reiterate the alleged substantive merit of their claims.  (*See* Dkt.

No. 17, Attach. 2 at 4-8, 12-14.)  The court agrees with defendants.

       *i.*    *Everett's Due Process Claim*

Everett alleges that he has been deprived, without due process, of a

property interest in child support which he is owed.  (*See* Compl. ¶¶ 8-19.)

Where a procedural due process claim is "premised on a random

unauthorized act," there can be no "violation so long as the State provides

a meaningful postdeprivation remedy."  *Robinson v. Connell*, No. 9:05-cv-

1428, 2011 WL 1103771, at *2 (N.D.N.Y. Mar. 23, 2011) (internal quotation

marks and citation omitted).  Where such a procedural remedy exists,

regardless of whether the plaintiff avails himself of it, "a due process claim

must be dismissed."  *Id*. (internal quotation marks and citation omitted).

Because the deliberate and unlawful misappropriation of child

support funds owed to Everett would undoubtedly constitute a random and

unauthorized act, due process is not offended as long as an adequate

post-deprivation procedural remedy existed.  *See Robinson*, 2011 WL

1103771, at *2.  "A proceeding under Article 78 of New York's Civil

Practice Law and Rules . . . is adequate for due process purposes, even

15

though a litigant cannot recover the same relief he or she may be able to recover in a [section] 1983 action." *Lawrence v. Antonucci*, 144 F. App'x 193, 193-94 (2d Cir. 2005). Such an action, in the nature of mandamus, was available to Everett. *See In re Blue v. Comm'r of Soc. Servs.*, 306 A.D.2d 527, 527-28 (2d Dep't 2003).[7] Accordingly, Everett's due process claim must fail.

> ii.   *Charles' Due Process Claim*

Charles contends that his driver's license was suspended, unlawfully[8] and without proper notice. (*See* Compl. ¶¶ 44-46.) Unlike unsanctioned deprivations, where a due process claim is premised on "an established state procedure . . . the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (internal quotation marks and citation omitted). Instead, "notice and some opportunity to be heard" must ordinarily be afforded prior to the deprivation. *Gudema v. Nassau Cnty.*,

---

[7] While Everett has submitted evidence that he sought redress in Family Court, (*see* Dkt. No. 17, Attach. 1 at 9-17), he does not appear to have pursued an Article 78 proceeding.

[8] In addition to alleging a lack of notice, Charles claims that the revocation of his license was unlawful because he was not subject to a current order of support. (*See* Compl. ¶ 57.) The propriety of the suspension, however, is of no moment to the present procedural due process analysis.

163 F.3d 717, 724 (2d Cir. 1998).  Determining whether the process

provided is adequate requires a weighing of: (1) the private interest

affected; (2) the risk of erroneous deprivation and the probable value of

further safeguards; and (3) the governmental interest at issue.  *See Rivera-*

*Powell*, 470 F.3d at 466 (citing *Mathews v. Eldridge*, 424 U.S. 319, 355

(1976)).  Because the suspension of Charles' driver's license is likely

attributable to a state procedure as opposed to an unauthorized

governmental action, the adequacy of process available to him is reviewed

under the more onerous state-procedure analysis.  As articulated below,

however, the Due Process Clause was not offended regardless of whether

the deprivation was unauthorized or premised on a sanctioned procedure.

When a support obligor faces suspension of his driving privileges

pursuant to N.Y. Soc. Serv. Law § 111-b(12) and N.Y. Veh. & Traf. Law §

510 (McKinney 2011), the OTDA must "notify [him] in writing" that, unless

he complies with certain statutory requirements, his "continued failure to

pay the support arrears shall result in notification to the [DMV]."  N.Y. Soc.

Serv. Law § 111-b(12)(b)(1).  Before the DMV is notified, the obligor may

challenge the impending suspension directly with the support collection

unit, and, if he disagrees with its final determination, he may then seek

17

redress in Family Court.[9]  *See id.* §§ 111-b(12)(b)(2), (d).

Once the DMV is notified of an impending suspension, N.Y. Veh. & Traf. Law § 510 dictates that suspension take effect "no later than fifteen days from the date of the notice thereof to" the obligor. § 510(4-e)(3). While section 510(4-e)(4) provides that "[f]rom the time the commissioner is notified by [OTDA] of a person's liability for support arrears . . . such person shall have no right to commence a court action or proceeding or to any other legal recourse against the commissioner to recover such driving privileges as authorized by this section," it also states that "nothing herein shall be construed to prohibit such person from proceeding against the support collection unit pursuant to article [78]."

Charles contends that he did not receive notice from the SCSCU, but instead learned of the impending suspension from the DMV's June 26, 2009 letter indicating that his license would be "suspended as of July 10, 2009 for back child support."  (Compl. ¶ 45.)  While it is unclear whether

---

[9] Specifically, the obligor may object directly to the support collection unit, in writing, within forty-five days of the notice date.  *See* N.Y. Soc. Serv. Law §§ 111-b(12)(b)(2), (d).  The collection unit is required to notify the obligor of the results of its review "within seventy-five days from the" notice date.  *Id.* § 111-b(12)(d)(1).  If the collection unit determines that suspension is appropriate, the obligor has thirty-five days from the mailing of the adverse decision to satisfy the full amount owed, or file an objection in Family Court.  *See id.*  Where an objection is filed in Family Court, and it is unsuccessful, the support collection unit is not to notify the DMV "until fifteen days after entry of judgment by the family court."  *Id.*

the objection provisions of N.Y. Soc. Serv. Law § 111-b(12)(d) were applicable, either on their own or by way of section 111-b(12)(f), during the window of time in which he admits receiving notice, Charles retained the ability to bring an Article 78 proceeding against the SCSCU, as implied in N.Y. Veh. & Traf. Law § 510(4-e)(4).[10]

As for post-deprivation process, N.Y. Soc. Serv. Law § 111-b(12)(f) contemplates the instant scenario and states that "[a] support obligor who alleges that he . . . has not received actual notice pursuant to [section 111-b(12)(b)] and whose driving privileges were suspended may at any time request a review pursuant to [section 111-b(12)(d)]."  Such a challenge would trigger the procedure articulated above, providing for review by the support collection unit, Family Court, and, ultimately, an Article 78 proceeding.

In light of the well-articulated procedures in place to ensure that obligors subject to license suspension are afforded an opportunity to be heard both before and after suspension, the risk of erroneous deprivation is small.  Furthermore, "the nature of the private interest here is not so

---

[10] Instead of availing himself of this opportunity, though, Charles filed an unsuccessful order to show cause in Family Court on July 6, 2009.  (*See* Compl. ¶¶ 46, 48, 50.)

great," *see Dixon v. Love*, 431 U.S. 105, 113 (1977), and the governmental interest in efficiently collecting child support from delinquent obligors is considerable.  Accordingly, regardless of whether the suspension of his license resulted from a sanctioned procedure or the random and unauthorized act of a governmental employee, the process available to Charles was sufficient under the circumstances, and dismissal of his due process claims is appropriate.  *See Massi v. Flynn*, 353 F. App'x 658, 660 (2d Cir. 2009) (holding that an Article 78 proceeding is "an adequate pre- and post-deprivation procedure available under New York law").

**E.    Claims on Behalf of Elinor King**

The Saratoga County defendants next request dismissal of the Collins' claims to the extent that they seek redress for wrongs perpetrated against Elinor King, who is not a party to this action.  (*See* Dkt. No. 13, Attach. 2 at 7.)  While it is not clear that the Collinses sought to bring any claims on behalf of King, to the extent that they did, those claims are dismissed.  *See Franko v. Suffolk Cnty. Corr. Facility*, No. 10-CV-5449, 2011 WL 1004891, at *1 n.1 (E.D.N.Y. Mar. 17, 2011) ("Given Plaintiffs' *pro se* status, they cannot assert the rights of others in this action.")

20

**F.**   **Motions to Compel Discovery**

In light of the dismissal of the Collins' Complaint, their motions to compel discovery are denied as moot.

**G.**   **Remaining Claims and Amendment**

Having dismissed the Collins' federal claims, the court declines to exercise jurisdiction over the remaining state common-law causes of action.  While the Second Circuit dictates that a *pro se* Complaint "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted), no such indication can be gleaned from a liberal reading of the Collins' Complaint.  Accordingly, the Collins' Complaint is dismissed in its entirety without leave to amend.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions to dismiss (Dkt. Nos. 10, 13) are **GRANTED** and plaintiffs' claims are **DISMISSED**; and it is further

**ORDERED** that the plaintiffs' cross motions to compel discovery (Dkt. Nos. 16, 17) are **DENIED** as moot; and it is further

**ORDERED** that the clerk close the case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

July 2, 2012
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court